AMOS C. GRAVES, ADMINISTRATOR,

v.

HELEN M. SAFFORD.

*Administration—Claims—Allowance of—Note Payable after Death.*

1. The provisions of the statute of wills can not be evaded by the making of a promissory note intended as a testamentary bequest merely.

2. A promissory note may be given upon different, distinct and independent considerations, and if one consideration is valid and the other not, there may be a recovery *pro tanto* so far as it is founded on a valid consideration.

3. The mere fact of duty or moral obligation upon the part of the maker of a promissory note, payable after his death, will not alone enable the promisee to enforce it.

4. While in case of an obligation enforceable at law to pay for services, of which there was no standard of value, an intestate might estimate them at any sum he chose, where there is no such obligation, such a note is a mere promise of a gratuity, and not enforceable against the estate.

5. In an action upon such note it is proper to call as a witness in behalf of the administrator, the husband of one of the heirs of such intestate.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Messrs. HOPKINS, ALDRICH & THATCHER, for appellant.

Messrs. M. O. SOUTHWORTH and R. N. BOTSFORD, for appellee.

CARTWRIGHT, J.   William H. Ruste, appellant's intestate, made his note August 17, 1887, to his sister, the appellee, for $5,000, due one day after his decease, with interest after due. He died September 30, 1887, and she had possession of the note before his death.   The note was presented in the County Court for allowance as a claim against his estate, and $2,000 was allowed by that court.   On appeal by the administrator to the Circuit Court a trial was had by the court without a jury, and the whole amount of the note was allowed.

It appears that William H. Ruste, the maker of the note, was without family, and while boarding at a hotel in Aurora, Illinois, was sick, and while sick was taken, in February, 1886, at the invitation of appellee, to her home, where he was cared for by her for a few weeks until his recovery from that attack. He remained there as a boarder and continued to reside with appellee until his death. He provided carpet and furniture for his room, and the price of his board was fixed at $5 per week. He sent some of his washing to a laundry, and paid twenty-five cents per week for that part of his washing done at home. The payments for washing were made to appellee, who paid the same over to the hired girl, who did the washing for him. One payment, at least, of board, is also shown by the evidence.

After his first sickness he occupied his room upstairs, and although not in very good health, was not confined to his bed, or to the house, but took his meals with the family, and generally did not require any special attention until about the time of his last sickness, which lasted a few weeks only, before his death. He was confined to his bed about three weeks before he died.

The affectionate kindness of appellee in removing him from the hotel and her attention subsequently, excited the liveliest feelings of gratitude in him. He considered himself fortunate to have such a sister at such a time, and desired to make some recompense to her, for that kindness which money could not buy.

Before making the note he expressed an intention not to make a will, but to accomplish his purpose by making a note. When he directed the note to be drawn, he said that his business was all arranged and he was ready to die but for this one thing.

Wanting to control his property while he lived, he directed the note to be drawn payable after his death, and it was done accordingly. It is clear that the intestate felt the strongest moral obligation to reward his sister for her many acts of kindness toward him. This was such a feeling as should and would influence a testator in the disposition of property by

will, and create a moral duty, well recognized, to distribute his estate according to the moral obligations resting upon him. Where such a method is adopted and carried out under the salutary checks and provisions of the law for securing free action and preventing fraud, imposition and undue influence, the law recognizes its validity and bestows such reward according to the expressed will of the testator; but where there is a promise performable after the death of the promisor, as in the case of this promissory note, the mere fact of duty or moral obligation alone will not enable the promisee to enforce it. The provisions of the statute of wills can not be evaded by the making of a promissory note intended as a testamentary bequest merely.

While Ruste felt extremely grateful to appellee, and wished to compensate her, it seems that he did not recognize any legal obligation to do so.

He claimed the right to control his own property so long as he might live, and he postponed the payment of this sum until after his death, to be paid out of his estate. He was able to have made payment at once if he considered that appellee had any claim or account to be settled or paid. He left an estate of over $30,000. The whole transaction shows that the parties did not regard the making of the note as the settlement of a claim or account of that amount. The price of board was fixed and agreed upon, and there was no other service shown in the evidence, not fairly included in the express contract, except such as was prompted by sisterly affection, and rendered without any expectation of payment.

When the note was made he had become aware that he might not live long, and in view of that fact he made the note with the benevolent intention of showing his gratitude to and regard for appellee. It is true that if there was ever any obligation enforceable at law, to pay for services of which there was no standard value, the intestate might estimate them at any sum he chose; but where there is no such obligation, a note is a mere promise of a gratuity, and not enforceable against the estate. Williams v. Forbes, 114 Ill. 167; Arnold v. Franklin, 3 Ill. App. 141; Hamor v. Moore's Adm'r, 8 Ohio St. 239.

It is apparent that this note was intended in the main as a testamentary bequest merely, and that in so far as it was of that nature and without valid consideration, it could not be enforced.

There had been an obligation incurred by the intestate for board and accommodations, which is not shown to have been otherwise paid or settled in full, and if that or any other like valid claim entered into the consideration of the note, the claimant might recover on the note *pro tanto* to the amount of such valid consideration.

A promissory note may be given upon different, distinct and independent considerations, and if one consideration is valid and the other not, there may be a recovery *pro tanto* so far as it is founded on a valid consideration. Parish v. Stone, 14 Pick. 198; Forbes v. Williams, 13 Ill. App. 280.

On the trial appellant called T. Otto Fisk as a witness in his behalf, but he was not allowed to testify, for the reason that he was husband of one of the heirs of Ruste. He was a competent witness and it was error to reject him as such.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*