Argued 3 April, decided 29 May, 1906.

**AUSTIN *v.* VANDERBILT.**

85 Pac. 519.

Trover—Sufficiency of Complaint.

1. In an action of trover it is sufficient to allege the ownership of the property and the right to its possession, together with the fact of conversion by defendant, and the damage, without particularly stating the acts constituting the conversion or the means of their accomplishment.

Trover—Tender of Debt After Conversion.

2. Where a pledge has been converted by the pledgee and cannot be returned, the pledgor need not tender the amount of the debt secured as a condition of bringing an action for conversion.

Trover—Measure of Damages—Competent Evidence.

3. The value of property at the time of its conversion is the measure of damages in trover, but evidence as to the value a reasonable time before and after that date is competent.

Appeal—Bill of Exceptions—Presumption as to Error.

4. Error is not presumed, but must affirmatively appear from the bill of exceptions.

For instance: In an action for the conversion of diamonds, the admission of evidence as to the value of flawless diamonds cannot be considered as error unless the bill of exceptions shows that the stones in question were not of that kind.

From Multnomah: Melvin C. George, Judge.

Statement by Mr. Justice Moore.

This is an action by Aimee Austin against Oscar Vanderbilt to recover damages for an alleged conversion of personal property. The complaint states that, October 30, 1902, at Los Angeles, Cal., the plaintiff was the owner and possessed of one pair of 6-carat solitaire earrings, pure white, of the value of $900, and also of one horseshoe pin, set with 11 diamonds, of the value of $285, which she then and there delivered to the defendant; that she thereafter demanded of him possession of such property, but he refused to comply therewith, and converted it to his own use, to her damage in the sum of $1,185. A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, having been overruled, an answer was filed denying the material allegations of the complaint, and averring that the diamonds were delivered to the defendant as security for a loan of $200; that, plaintiff having failed to pay any part of that sum, he gave her a written notice, July 30, 1903, that in 30 days he would sell such prop-

erty to the highest bidder; that pursuant to such notice he sold the diamonds mentioned for $255, which was the full value thereof, to A. McPhail of Chicago, Ill.; that defendant, retaining the amount of his debt, tendered to plaintiff in writing $55, which she refused to accept, whereupon he deposited that sum in court for her. The reply denied the allegations of new matter in the answer, and, the cause being tried, the jury found for the plaintiff, assessing her damage at $726, less $200 loaned to her by the defendant, and, judgment having been rendered on the verdict for $526, the defendant appeals.     AFFIRMED.

For appellant there was a brief over the names of *A. King Wilson* and *O. A. Neal,* with an oral argument by *Mr. Wilson.*

For respondent there was a brief and an oral argument by *Mr. Arthur Carpenter Emmons.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended that the complaint should have alleged the substance of the contract, respecting the delivery of the diamonds, and averred wherein it had been violated by the defendant, but not having done so, the pleading assailed failed to state facts sufficient to constitute a cause of action, which defect was not waived by answering over. In *Miller* v. *Hirschberg,* 27 Or. 522 (40 Pac. 506), it was held that an allegation of the facts now insisted upon was unnecessary in an action of trover, Mr. Chief Justice BEAN saying: "The material averments in an action of this character are ownership and right to the possession in plaintiff, and that the defendant wrongfully took and converted the property in question to his own use, or that, being lawfully in possession thereof, he so converted it." The conclusion thus reached is amply supported by the adjudged cases (21 Ency. Pl. & Pr. 1053), which hold that it is sufficient, in an action of trover, to allege in the complaint the conversion as a fact, without stating the particular acts constituting the unauthorized assumption and exercise of the right of ownership over the plaintiff's goods and personal chattels to the exclusion of his dominion over them: 21 Ency. Pl. & Pr. 1077. Whether it is necessary to the maintenance of an action of this character

to allege a tender of the sum loaned, to secure the payment of which the property was pledged, will be considered in connection with the contention that the court erred in denying a motion for a nonsuit and also in refusing to instruct the jury to find for the defendant.

2. An examination of plaintiff's pleadings would seem to show that her theory was that the delivery of the diamonds was a mere naked bailment; but, as the jury found that she owed the defendant $200, we shall adopt his hypothesis, that the delivery of the jewels to him was a pledge to secure the payment of that sum. The bill of exceptions contains the following statement:

"There was no evidence introduced at the trial of any demand to repay any loan, or of any tender of any money by plaintiff to defendant."

So that a consideration of the questions of averments and of proof of tender become important. In *Halliday* v. *Holgate,* L. R. 3, Ex. 299, one Bentley borrowed of the defendant a sum of money, to secure the payment of which he deposited scrip certificates for certain shares of stock in a mining company, Bentley became a bankrupt and absconded, whereupon the defendant, without demand or notice, sold a part of the certificates. The plaintiff, as the bankrupt's assignee, not having tendered any of the debt, brought an action of trover against the defendant, to recover the value of the shares disposed of, and it was held, affirming the decision in *Donald* v. *Suckling,* L. R. 1 Q. B. 585, that, assuming the sale to be wrongful, as the immediate right to the possession of the shares of stock was not by the sale revested in the plaintiff, he could not maintain trover, either for the whole value of the shares or for nominal damages, thereby substantially overruling the decision in *John-son* v. *Stear,* 15 C. B. (N. S.) 330. In *Halliday* v. *Holgate,* Mr. Justice WILLES, speaking for the Court of Exchequer Chamber, in discussing the question, says: "It is true the pledgor has such a property in the article pledged as he can convey to a third person, but he has no right to the goods without paying off the debt, and until the debt is paid off the pledgee has the whole present interest. If he deals with it in a manner other

than is allowed by law for the payment of his debt, then, in so far as by disposing of the reversionary interest of the pledgor he causes to the pledgor any difficulty in obtaining possession of the pledge on payment of the sum due, and thereby does him any real damage, he commits a legal wrong against the pledgor. But it is a contradiction in fact, and would be to call a thing that which it is not, to say that the pledgee consents by his act to revest in the pledgor the immediate interest or right in the pledge, which by the bargain is out of the pledgor and in the pledgee. Therefore for any such wrong an action of trover or of detinue, each of which assumes an immediate right to possession in the plaintiff, is not maintainable, for the right clearly is not in the plaintiff." The doctrine thus announced in England prevails in some of the states of the Union.

In *Cortelyou* v. *Lansing,* 2 Caines' Cas. 200, however, a different rule was adopted where it was held that, if a pledgee sells the pledge before application is made to redeem it, he is answerable in damages for the value of the property converted, and that it is not necessary in such case to make an actual tender of the sum due, to secure the payment of which the property was delivered to the pledgee. In deciding that case Mr. Justice KENT, assigning a reason for the conclusion thus reached, observes: "But when one party has incapacitated himself to perform his part of the contract, there is no need of the other coming forward at the time to make a tender, or to show himself in a capacity to pay, because it would be a nugatory act which the law will never require. If the one party discharges the other from a performance, by saying he will not perform on his part (and voluntarily and notoriously rendering himself unable to perform his part is equivalent to such discharge), it is well understood that it is not necessary for the other party to go forward." The rule established in that pioneer case is tersely stated by Mr. Milburn as follows: "If the property has been converted by the pledgee, no tender of the debt secured need be made by the pledgor before bringing an action against the pledgee": 22 Am. & Eng. Enc. Law (2 ed.), 874. Judge Story, in his work on Bailments (8 ed.

(48th Or.—14)

§ 349), in speaking of the recovery of compensation for injury sustained by reason of the conversion of a pledge, remarks: "But, if an action is brought, the pledgee may recoup his debt in the damages." In addition to the cases cited by Mr. Milburn, as supporting the text quoted, see the following: *Hallack L. & M. Co.* v. *Gray,* 19 Colo. 149 (34 Pac. 1000); *Wilson* v. *Little,* 2 N. Y. 443 (51 Am. Dec. 307); *Rush* v. *First Nat. Bank,* 71 Fed. 102 (17 C. C. A. 627); *Waring* v. *Gaskill,* 95 Ga. 731 (22 S. E. 659); *Glidden* v. *Mechanic's Nat. Bank,* 53 Ohio St. 588 (42 N. E. 995, 43 L. R. A. 737); *Feige* v. *Burt,* 118 Mich. 243 (77 N. W. 928, 74 Am. St. Rep. 390); *Work* v. *Bennett,* 70 Pa. 484.

The pledgee impliedly agrees faithfully to hold the pledge until the conditions have been performed upon the faith of which the choses in action, goods, or personal chattels have been delivered to him. If, in violation of his trust, he sells or disposes of the pledge, thereby putting it out of his power to return the property, it would be useless to impose upon the pledgor the burden of tendering to the pledgee the payment of the debt, or the performance of the duty before he could maintain an action against the pledgee for the damages sustained by reason of the conversion, when it would be impossible for the latter to discharge the obligation which he had undertaken. When a pledgee, by his overt act, violates the terms of his agreement, so that it cannot be specifically enforced, he necessarily severs the fiduciary relations he assumed towards the pledgor, whose remedy against him in this form of an action for the injury sustained, though treated as one for conversion, is in reality founded on the breach of the contract: *Glidden* v. *Mechanic's Nat. Bank,* 53 Ohio St. 588 (42 N. E. 985, 43 L. R. A. 737.)* The statement that the rules of law, which are founded in reason, do not require the performance of vain things, has been so often repeated as to become almost a general maxim, invoking which we think there was no necessity to allege in the complaint, or to prove

*NOTE.—See with this case an extensive note, Pledgee's Conversion of Pledged Property by Invalid Sale.          REPORTER.

at the trial a tender of any sum by the plaintiff to the defendant as a condition precedent to this right to maintain this action.

3. A. Feldenheimer, who, as plaintiff's witness, testified that he had bought and sold diamonds for several years and knew the value thereof, was permitted, over objection and exception, to state the highest market value from October 30, 1902, to the time of trial, of two pure white flawless diamonds, one weighing a trifle less and the other a little more than three carats, and also to specify the rate of increase in the value of such jewels in the interim, and it is contended by defendant's counsel that an error was committed thereby. The value of property at the time of its conversion is generally the measure of damages in an action of trover. To ascertain that value, however, evidence of its worth a reasonable time prior and subsequent to the conversion is admissable: *Douglass* v. *Kraft,* 9 Cal. 562; *Hamer* v. *Hathaway,* 33 Cal. 117; *Denton* v. *Smith,* 61 Mich. 431 (28 N. W. 160); *Kendrick* v. *Beard,* 90 Mich. 589 (51 N. W. 645); *Gauche* v. *Milbrath,* 94 Wis. 674 (69 N. 999).

4. We think no error was committed as alleged, nor in permitting the witness to testify concerning the value of "flawless" diamonds; for the bill of exceptions does not disclose that the jewels which plaintiff delivered to the defendant were not of that quality.

These considerations necessitate an affirmance of the judgment, which is ordered.                    AFFIRMED.